**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JARED B. LACHANCE,          )
    Petitioner,              )
                  )
      v.                    )          Civil Action No. 05-707
                  )          Criminal No. CR 03-194
UNITED STATES OF AMERICA,    )
    Respondent               )

**MEMORANDUM OPINION**

Jared LaChance ("Petitioner") moves under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence of imprisonment imposed upon him by this Court on May 25, 2004. For the reasons set forth below, Petitioner's motion is denied.

**I.    BACKGROUND[1]**

On June 27, 2003, employees of the Great American Federal Savings and Loan located in Munhall, Pennsylvania ("Great American"), alerted the Pittsburgh office of the Federal Bureau of Investigation that Great American had just been robbed. According to a teller's report to investigators, he was approached at approximately 2:10 p.m. by a lone white male who handed him a slip of paper which the teller thought was a check reorder request. He put the slip of paper on a counter behind his station. When he turned back, the man gave him an envelope and a note reading, "No exploding ink. Put the money in the envelope. Don't look up. Hurry up!" The teller handed an envelope of money over to the robber who took it, along with the note, and left.

The first paper given to the teller included the name and address of Jared B. LaChance. Witnesses to the robbery provided details for a composite description of the bank robber. The

---

[1] The facts in this section are undisputed.

1

investigators obtained a photograph of Mr. LaChance which was incorporated in a photospread of five other white males with hair color and facial features similar to those of Petitioner. After reviewing the photos, the teller identified Mr. LaChance as the individual who had robbed Great American on June 27, 2003.

Petitioner was arrested on July 13, 2003. On July 17, 2003, a federal grand jury issued an indictment, charging him with one count of bank robbery in violation of 18 U.S.C. § 2113(a). Mr. LaChance entered a plea of not guilty at his arraignment on July 31, 2003, where he was represented by Thomas Livingston of the Federal Public Defender's Office. (Criminal No. 03-194, Doc. No. 10.) Following a number of requests for extensions for time in which to file pretrial motions, Mr. LaChance and the Government reached a plea agreement. Petitioner changed his plea from not guilty to guilty on January 28, 2004. (Doc. No. 20.)

Petitioner and his counsel filed no objections to the Presentence Investigation Report ("PSIR") prepared by the United States Probation Office, but did file a motion for downward departure prior to sentence being imposed. In the motion, counsel argued that pursuant to United States v. Shoupe, 988 F.2d 440 (3d Cir. 1993) and United States Sentencing Guideline ("U.S.S.G.") § 4A1.3, the career offender enhancement[2] recommended by the Probation Office significantly over-represented the gravity of his client's limited criminal history and the risk that he would commit further crimes. (Doc. No. 23.) The Government opposed the motion, arguing that the events which led to the enhancement of his sentence as a career offender were crimes which demonstrated his propensity for violence. (Doc. No. 25.)

---

[2] In calculating the offense level, Mr. LaChance was subject to an enhancement as a "career offender" within the meaning of U.S.S.G. § 4B1.1(b)(1)(C), thereby increasing the base level for the crime of bank robbery from 20 to 32 points. The events which triggered this enhancement, a prior robbery and two counts of simple assault, are discussed in more detail below.

On May 25, 2004, Petitioner's motion for a downward departure on this basis[3] was denied.

Mr. LaChance was sentenced to a term of imprisonment of 121 months to be followed by a three

year period of supervised release. (Doc. No. 27.) The Court also recommended "that defendant's

mental health be evaluated and if appropriate, treated; that defendant, if eligible, participate in a

residential 500 hour intensive drug treatment program." (Id.)

Petitioner did not file a direct appeal of his sentence. On May 23, 2005, through counsel,

Mr. LaChance filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255,[4] stating only

one basis for his petition, i.e., denial of effective assistance of counsel. (Motion under 28 U.S.C.

§ 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, Doc. No. 30.)

In his petition, ¶ 12.A, Mr. LaChance stated the reason for this claim:

Trial counsel was ineffective inasmuch as counsel failed to move for a downward departure of sentence based on Defendant's long history of mental illness which counsel was made aware of by Defendant, Defendant's family, Court records and the pre-sentence investigation.

The United States filed its response on December 2, 2005 (Doc. No. 40), arguing that the

claim of ineffective assistance of counsel failed to satisfy the standard set forth in Strickland v.

Washington, 466 U.S. 668 (1984).

---

[3] The Court determined Petitioner's criminal history category to be VI with a total offense level of 29 (including the career offender enhancement), resulting in a sentence with a guideline range of 151-188 months imprisonment, supervised release of 2 to 3 years, restitution, and a fine ranging from $15,000 to $150,000. Petitioner was sentenced to 121 months in prison, taking into consideration the fact that he would be subject to a 30-month consecutive sentence for having committed the crime herein while on parole from a previous state conviction. (See Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002) which permits the court to adjust the defendant's sentence to account for the state sentence.) No fine was imposed, but Mr. LaChance was required to pay $4,046.00 in restitution to Great American. In determining the offense level, Mr. LaChance received a 2-level decrease for acceptance of responsibility (see U.S.S.G. § 3E1.1(a)) and an additional 1-level decrease based on the timeliness of his intention to enter a plea of guilty (see U.S.S.G. § 3E1.1(b).)

[4] In relevant part, 28 U.S.C. § 2255 provides: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed *in violation of the Constitution or laws of the United States*, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." (Emphasis added.)

## II. STANDARD OF REVIEW

Mr. LaChance concedes that the two-prong test for ineffective assistance of counsel set forth in Strickland establishes the standard of review for his appeal under § 2255. (Brief in Support of Petition for a Writ of Habeas Corpus, "Brief," Docket No. 26, at 3.) The Sixth Amendment to the United States Constitution provides, *inter alia*, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST., amend. VI. The Supreme Court has noted that "[t]he right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled." Strickland, 466 U.S. at 685, internal quotation omitted. The Court has further recognized that the Sixth Amendment provides the right to *effective* assistance of counsel and that a defendant may be deprived of this constitutional right when his attorney simply fails to render "adequate legal assistance." Strickland, id. at 686, *citing* McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970), and Cuyler v. Sullivan, 446 U.S. 335, 344 (1980).

Under Strickland, a petitioner must show first that his counsel's performance was deficient, i.e., that it "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687. Second, the petitioner must show that there is a "reasonable probability," i.e., "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Failure to satisfy either prong of the test will defeat a petitioner's claim of ineffective assistance of counsel and both do not need to be addressed by the reviewing court if it is clear that the defendant makes an insufficient showing on either one. Id. at 697.

In reviewing counsel's performance under a motion to vacate, the court "must be highly deferential" to tactical and professional decisions made by the petitioner's attorney. Strickland, 466 U.S. at 689. This is because

4

> [i]t is all too tempting for a defendant to second-guess counsel's assistance
> after conviction or adverse sentence, and it is all too easy for a court,
> examining counsel's defense after it has proved unsuccessful, to conclude
> that a particular act or omission of counsel was unreasonable. . . . [A] court
> must indulge a strong presumption that counsel's conduct falls within the
> wide range of reasonable professional assistance; that is, the defendant
> must overcome the presumption that, under the circumstances, the
> challenged action might be considered sound trial strategy.

Strickland, 466 U.S. at 689, internal citation and quotation omitted.

Thus, when a court decides an ineffectiveness claim, it must "judge the reasonableness of

counsel's challenged conduct on the facts of a particular case, viewed as of the time of counsel's

conduct" and determine if, "in light of all the circumstances, the identified acts or omissions were

outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; see

also Duncan v. Morton, 256 F.3d 189, 200 (3d Cir. 2001) (performance is judged by "an objective

standard of reasonableness, viewed to the extent possible from the attorney's perspective at the

time, without the distorting effects of hindsight.") Under such a highly deferential standard, only

a rare claim of ineffective assistance of counsel is likely to succeed. United States v. Kauffman,

109 F.3d 186, 190 (3d Cir. 1997).

The Court of Appeals for the Third Circuit has held that the failure to argue an appropriate

downward departure constitutes ineffective assistance of counsel. United States v. Headley, 923

F.2d 1079, 1083-84 (3d Cir. 1991); see also United States v. Motto, CA No. 01-2676, 2002 U.S.

Dist. LEXIS 8906, *23-*24 (E.D. Pa. May 17, 2002) (granting § 2255 petition in part because

counsel's failure to seek a downward departure due to defendant's extraordinary post-offense

rehabilitation efforts was unreasonable under prevailing professional norms and there was a real

probability that but for that failure the sentencing outcome would have been different.)

## III.   ANALYSIS

Petitioner argues that Thomas Livingston, his counsel during all proceedings up to and

including his sentencing, was ineffective because despite the fact that he was aware of Mr.

LaChance's history of mental illness, he failed to file a motion for a downward departure on that

basis. (Brief at 2-3.) According to the Presentence Investigation Report, Mr. LaChance suffered

from a history of depression and had been prescribed lithium while incarcerated at the Allegheny

County Jail. Petitioner's mother, Cheryl LaChance, had told the investigator who prepared the

PSIR that she had attempted to have her son committed to mental health facilities through the use

of state proceedings. (Id. at 3.) Mr. LaChance's entire argument on this issue is that "despite

evidence in this matter of the possible existence of diminished capacity, prior counsel from the

Federal Public Defender's Office failed to request a downward departure based on [U.S.S.G.] §

5K2.13. Counsel was, therefore, ineffective." (Id. at 4.) For this conclusion, Petitioner relies on

Kauffman, 109 F.3d 186 at 190; Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir.

1989); and United States v. De La Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993).[5]

A court may depart from the sentencing guideline range if the defendant committed the

charged offense "while suffering from a significantly reduced mental capacity" which "contributed

substantially to the commission of the offense," provided that none of the following conditions exist:

(1)     the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants;

(2)     the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence;

(3)     the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or

(4)     the defendant has been convicted of an offense under chapter 71, 109A, 110 or 117 of title 18, United States Code.

---

[5] The Court has been unable to determine the applicability of Forte to this argument. That case deals with a claim of ineffective assistance of counsel based on defense counsel's failure to object to the prosecutor's practice of peremptorily challenging jurors on racial grounds. That is, the case does not address the ineffectiveness of counsel for failing to seek a downward departure on the basis of § 5K2.13 nor any other bases for downward departure set forth in § 5K of the U.S.S.G. Nor do we consider De La Fuente relevant inasmuch as that case discusses ineffective assistance of counsel in the context of a failure to object to the Government's breach of a plea agreement which included a downward adjustment for substantial assistance, not a failure to seek a downward departure per se.

6

U.S.S.G. § 5K2.13 (2003).[6]

"Significantly reduced mental capacity" means the defendant has a "significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13, n1. Before a court will consider a downward departure under § 5K2.13, the defendant must show by a preponderance of the evidence that he suffered from such a reduced mental capacity and that the condition contributed to the commission of the offense. United States v. McBroom, 124 F.3d 533, 539 (3d Cir. 1997).

The threshold question in this inquiry is whether any of the disjunctive conditions set out in U.S.S.G. § 5K2.13 apply to the facts of this case. The Court concludes that Mr. LaChance's argument that his counsel was ineffective in failing to seek such a downward departure must fail because his admitted drug use would have precluded such an argument.

According to facts set out in the PSIR, to which neither Mr. LaChance nor his counsel objected:

> Jared LaChance admitted that he has a history of marijuana, cocaine, LSD, ecstasy, and opiate usage. He started to use marijuana at age 15[7] and admitted to selling that drug for over two years to support his habit. . . . At the age of 18, he commenced cocaine usage and instantly became addicted. He admitted to doing things like stealing from his mother and grandmother and estimated that his habit cost $1,000 per day. He contends that he last used cocaine six months prior to his arrest.

(PSIR prepared March 9, 2004, ¶ 45, undocketed.)

On October 2, 1999, Mr. LaChance, then age 18, and an accomplice robbed two individuals

---

[6] It is unclear if the Court applied the November 1, 2003, or the November 1, 2002, edition of the Guidelines. The Guidelines provide that a court should use the "Guidelines Manual in effect on the date that the defendant is sentenced" unless there is an *ex post facto* concern. U.S.S.G. § 1B1.11(a), 1B1.11(b)(1). Petitioner had expressed such a concern in his pre-sentencing motion. The 2002 edition of the Guidelines did not include part (4) of § 5K2.13, but the change is irrelevant to our analysis because the chapters enumerated in (4) pertain to crimes of a sexual nature which are not implicated herein.

[7] Mr. LaChance was 22 years old when he committed the bank robbery to which he pled guilty. (PSIR, ¶ 36.)

in White Oak, Pennsylvania, during which time a stolen semi-automatic handgun was discharged into the air. He was arrested that same day for the robbery and on October 6, 1999, for possession of the stolen property, but released on $20,000 bond. (PSIR, ¶ 26.)

On March 13, 2000, Mr. LaChance attacked his sister, stabbing her with a kitchen knife and striking her on the head with a barbell. He also attempted to stab and strangle his mother. When interviewed following the assaults, his mother advised investigators that Petitioner had a series of suicide attempts and believed that his use of illegal substances was causing him to "simply flip his mind." Mr. LaChance later admitted that he had ingested several different types of pills and alcohol prior to the assaults. (PSIR, ¶ 29.)

Petitioner pled guilty to two counts of simple assault in the Court of Common Pleas of Allegheny County, Pennsylvania on December 14, 2000, and to two counts of robbery and criminal conspiracy in the same court on January 3, 2001. On April 2, 2001, Petitioner was sentenced for all of these crimes to three years' imprisonment in a state correctional institution, plus ten years' probation following parole. He was released from the custody of the Quehanna Motivational Boot Camp on April 18, 2002, having received credit for his period of incarceration following the attack on his family. While on probation, he tested positive for cocaine usage on April 10, 2003, and committed the offense herein. (PSIR, ¶¶ 48 and 31.)

During the pre-sentence investigation, Petitioner's mother reported that she believed her son's problems stemmed from "a serious substance abuse problem." (PSIR, ¶ 38.) Following the robbery in 1999, Mr. LaChance began drug rehabilitation on an out-patient basis on October 28, 1999, and transferred to a partial hospitalization program on November 9, 1999. During the inpatient program, he was described as resistant and "externally motivated" for treatment. After an early discharge from the in-patient program, he re-entered the partial hospitalization program a week later on November 30, 1999, with a diagnosis of chemical dependency. (Id., ¶ 46.) Ms. LaChance also contended that when she and her daughter were assaulted, Petitioner was under

8

the influence of drugs and not taking prescribed anti-depressant medication. (<u>Id.</u>, ¶ 38.) She reported that while incarcerated in the Allegheny County Jail, Petitioner had been prescribed lithium and had seen the staff psychologist, but had received no other professional mental health treatment. Finally, she reported that she had, at some prior date, unsuccessfully attempted to commit her son to a mental health facility through state proceedings. (<u>Id.</u>, ¶¶ 43-44.)

Having received the pre-sentence report, Mr. Livingston would have been aware of all these facts. In short, he knew that (1) Mr. LaChance had abused cocaine and/or other illegal substances for at least four years prior to the bank robbery; (2) although he denied continued use of cocaine, Petitioner had tested positive for such use just two months prior to the bank robbery; (3) his mental health treatment in October-November 1999 reportedly stemmed from his drug abuse, not from his depression; and (4) until incarceration after his arrest for the bank robbery in July 2003, Mr. LaChance's depression was not so severe as to require mental health counseling or commitment to a mental health facility nor, apparently, was he always compliant with taking anti-depressant medication which had been prescribed.

It is well-established that counsel must be familiar with the structure and basic content of the sentencing guidelines in order to give effective representation. <u>United States v. Day</u>, 969 F.2d 39, 43 (3d Cir. 1992). This is particularly important with regard to guidelines concerning downward departures because such guidelines "offer the opportunity to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves." <u>United States v. Gaskill</u>, 991 F.2d 82, 86 (3d Cir. 1993). However, where the attorney fails to raise a meritless argument, the defendant has not been deprived of his Sixth Amendment right to effective counsel. <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 671 (3d Cir.1996) (failure to raise arguments that would be overruled under prevailing law is not ineffective assistance); <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999) (citing cases from other circuits which arrive at the same conclusion.)

Despite Mr. LaChance's arguments that Mr. Livingston was ineffective for failing to pursue

9

a downward departure due to Petitioner's diminished capacity, the Court concludes that his Petition must fail. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. We conclude that Petitioner has failed to satisfy the prejudice prong of the Strickland test because, even if Mr. Livingston had raised the diminished capacity argument seeking a downward departure under § 5K2.13, such an argument would have been unavailing. That is, the Court could have readily concluded that any reduced mental capacity resulted from Petitioner's admitted voluntary drug use or, alternatively, that his depression was not so severe as to give rise to a "significant" reduction in his mental capacity. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . When a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Strickland, 466 U.S. at 692. It follows that the same applies to fruitless arguments. Given Mr. LaChance's admission that he was addicted to cocaine from the age of 18, coupled with the fact that he had tested positive for cocaine use only a few months prior to the robbery of Great American, defense counsel had reason to conclude that pursuing a downward departure would be fruitless. See Stone v. Farley, 86 F.3d 712, 717 (7th Cir. 1996) (failure to raise a losing argument does not constitute ineffective assistance of counsel.)

Moreover, Petitioner has offered no reasons why he believes the Court would have granted such a motion if one had been filed. Where there is nothing to suggest that the court would have granted the motion, the petitioner cannot demonstrate prejudice. Grant v. United States, CA No. 04-029, 2005 U.S. Dist. LEXIS 9060, *13 (D. Del. May 16, 2005); United States v. Edwards, 297 F. Supp.2d 813, 819 (E.D. Pa. 2003); Doe v. United States, 112 F. Supp.2d 398, 409 (D. N.J. 2000). Even if counsel herein had filed a motion for a downward departure pursuant to § 5K2.13, Petitioner has offered no evidence (or even argument) to support a conclusion that such a motion

10

would have been successful and his sentence would therefore have been reduced. Because Mr. LaChance suffered no prejudice as a result of the alleged deficiencies in his counsel's representation, Petitioner's motion under 28 U.S.C. § 2255 is denied.

Under 28 U.S.C. § 2255, a habeas corpus petitioner is entitled to a mandatory evidentiary hearing unless it is clear from the pleadings, files and records that he is not entitled to relief. United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988) (if a claim, "when taken as true and evaluated in light of the existing record, states a colorable claim for relief under Strickland, then further factual development in the form of a hearing is required.") Having concluded, based on the written record, that Mr. LaChance's claim is without merit, the Court finds no reason to hold an evidentiary hearing.

Finally, the Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2). Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) ("A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.")

An appropriate Order follows.

June __16__, 2006.

Arthur J. Schwab
United States District Judge
for
William L. Standish
United States District Judge

cc:   Warner Mariani, Esq.
      445 Fort Pitt Boulevard
      Suite 250
      Pittsburgh, PA 15219
      Email: marianilaw@mac.com

      Almon S. Burke, Jr., Esq.
      United States Attorney's Office
      700 Grant Street
      Suite 4000
      Pittsburgh, PA 15219
      Email: almon.burke@usdoj.gov